**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Whiting, Leroy Whiting and Lorenzo Garcia,<br><br>              Plaintiff,<br><br>v.<br><br>Dana A. Hogan; Clark Moving and Storage, Inc., and Mayflower Transit, LLC,<br><br>              Defendants. | No. 12-CV-08039-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Plaintiffs' Motion to Re-Open the Deposition of Defendant Dana A. Hogan, Motion for Sanctions for Defendant Hogan's Discovery Abuses, Motion to Compel Rule 30(b)(6) Depositions of Defendants Mayflower and Clark (Doc. 99), and Defendants' Motion for Sanctions for Failure to Confer in Good Faith (Doc. 105). The Court grants Plaintiffs' Motions to Re-Open and Compel Depositions and denies Plaintiffs' Motion for Sanctions. The Court further grants Defendants' Motion for Sanctions.

## BACKGROUND

In April 2012, the Court issued a Joint Case Management Order for this matter setting the deadline for the completion of fact discovery as January 11, 2013. (Doc. 59 ¶ 4.) Plaintiffs noticed the deposition of Defendant Dana Hogan in August 2012 and the parties agreed to conduct the deposition on October 19, 2012 in Dallas, Texas because of Hogan's trucking schedule. (Doc. 99-2, Ex. 2.) The deposition commenced as planned.

After a few hours into testimony, Defendants' counsel, Felice Guerrieri, informed Plaintiffs' counsel, George Bleus, that he would need to leave at 5 p.m. to travel back to the East coast but offered to continue the deposition at a later date if necessary. (Doc. 105-2, Ex. 13 at 82.) As the deposition proceeded, Guerrieri objected to Bleus' lines of inquiry, arguing on the record that they were repetitive, abusive and wasteful. Bleus argued that his lines of inquiry were relevant and subsequently contacted the Court to clarify the permissibility of his questioning. The Court found that the line of questioning that the Plaintiff insisted on pursuing relating to who drafted Defendants' discovery responses was meritless and/or protected by the attorney-client privilege and work-product immunity.  Defendants suspended Hogan's deposition at 5 p.m. and opposed a continuance but did not move for a protective order. (Doc. 99-2, Exs. 6, 6-c.)

Over the next several weeks, the parties exchanged correspondence asserting several areas of disagreement regarding discovery including re-opening Hogan's deposition, noticing Fed. R. Civ. P. 30(b)(6) depositions of Defendants Mayflower and Clark, taking three depositions of current and former Mayflower employees who were not listed as witnesses nor designated as 30(b)(6) deponents, various document production issues, and the necessity of extending the fact discovery deadline.   On November 13, 2012, while the parties had not yet personally conferred, Bleus informed Guerrieri that he had contacted the Court to set up a teleconference in order to resolve the disputes. (Doc. 105-1, Ex. 6.) The Court held a teleconference on November 29, 2012 and ordered the parties to provide supplemental briefing regarding the discovery disputes. (Doc. 95.)

## DISCUSSION

### I.   LEGAL STANDARD

A district court enjoys broad discretion in controlling discovery. *Harper v. Betor*, 95 F.3d 1157 (9th Cir. 1996) (internal citation omitted). The scope of discovery is governed by Rule 26, which allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is construed

broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case. *See id.*; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted). Further, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). District courts also have broad discretion in determining relevance for discovery purposes. *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Even relevant discovery may be limited, however, if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

If a requested disclosure is not made, the requesting party may move for an order compelling such disclosure, and such a motion must include a certification that the movant has made good faith efforts to obtain the requested disclosure or discovery without court action. Fed. R. Civ. P. 37(a)(1). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting objections. *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

## II.   GOOD FAITH CONFERENCE

Defendants contend that Plaintiffs' omnibus discovery motion should be denied because they have not made a good faith effort to confer in order to resolve this discovery dispute as required by Local Rule 7.2(j). The Rule states that "[a]ny discovery motion brought before the Court without personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions" and requires the moving party to attach a certification that such an effort was made. Under Fed. R. Civ. P. 37, there is a

similarly binding obligation on the parties to confer in good faith which contemplates "honesty in one's purpose to meaningfully discuss the discovery dispute, freedom from intention to defraud or abuse the discovery process, and faithfulness to one's obligation to secure information without court action." *Shuffle Master, Inc. v. Progressive Games, Inc.,* 170 F.R.D. 166, 171 (D. Nev. 1996). "'Good faith' is tested by the court according to the nature of the dispute, the reasonableness of the positions held by the respective parties, and the means by which both sides conferred." *Id.* "[T]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions." *Nevada Power Co. v. Monsanto Co.,* 151 F.R.D. 118, 120 (D. Nev. 1993).

Defendants contend that Plaintiffs' counsel did not make a sincere effort to resolve their discovery dispute before procuring the Court's intervention. Plaintiffs do not attach a separate certification to their discovery motion, as required by Local Rule 7.2(j), but state that "[a]s the parties have attempted to confer in good faith with regard this matter, it became reasonably apparent that this matter would necessitate Court intervention." (Doc. 99 at 6.) Plaintiffs assert that following the suspension of Defendant Hogan's deposition on October 19, 2012, they requested further dates for a re-opening of the same but they were met with continued opposition. (*Id.*) However, the record reveals that Plaintiffs were obstinate in their discovery demands and sparing in genuine efforts to confer. After Hogan's deposition, the parties had several e-mail exchanges in which Guerrieri made offers to confer telephonically. (Doc. 105-1, Exs. 3 (10/29/12), 4 (10/29/12), 5 (11/2/12), 7 (11/9/12), 8 (11/9/12), 9 (11/13/12), 11 (11/15/12).) Bleus did not schedule a call during one of the multiple time slots that Guerrieri provided nor did he offer another convenient time. Instead, he made a few unannounced (and unsuccessful) phone calls to Guerrieri, one of which was at a time when he was informed Guerrieri would be out of the office. (*Id.*, Exs. 4, 8, 11.) Thus Bleus failed to genuinely pursue "personal consultation" with Guerrieri to resolve the dispute.

In the e-mail exchanges with Guerrieri, Bleus staked out firm positions as to four

areas of disagreement providing justification or legal bases for those positions. First, although Guerrieri opposed re-opening Hogan's deposition, he offered to discuss the topics that remained to be covered. (*Id.*, Ex. 3.) Bleus refused to discuss the necessity of re-opening and instead stated "[p]lease advise wether [sic] you will produce Defendant Hogan or if [I] will have to seek Court intervention." (Doc. 99-2, Ex. 7-a.) Bleus also demanded that the second deposition take place in New Mexico rather than consider any other location because "the Defendant's [sic] in this matter have ample resources in order to accomplish any task or deadline, whether it be taking or attending depositions." (Doc. 105-1, Ex. 10.) Second, on November 1, 2012, Plaintiffs had requested 30(b)(6) depositions of Defendants Mayflower and Clark listing broad categories such as "company policy and procedure(s)", "driver training", and "company hiring practices." (Doc. 99-7, Ex. 51.) On November 9, 2012, Guerrieri requested Bleus to clarify those categories to decide who should testify as a party representative. (*Id.,* Ex. 52.) Instead of discussing the categories, Blues responded: "I have utilized the very same correspondence . . . in every single case involving a requested deposition for a 30(b)(6) company deponent. It has passed muster every time." (Doc. 105-1, Ex. 10.) Third, Guerrieri asked Bleus to explain why four Mayflower employees' depositions, which were not designated as Rule 30(b)(6) deponents, were discoverable in order to provide a stipulation to the same. (*Id.*, Ex. 5.) Bleus replied that the reason should be "crystal clear and does not need to be further articulated" besides his assertion that they "are essential to proving Plaintiff's [sic] claim against the two Defendant companys [sic]." (*Id.*, Ex. 10.) Fourth, Bleus refused to discuss Guerrieri's offer to extend the discovery deadline of January 11, 2013 in light of the several additional depositions that Bleus wanted to conduct in the remaining two holiday months. (*Id.*)

It is evident from these exchanges that Plaintiffs did not present to Defendants the merits of their positions with nearly the same candor and specificity they provide in their discovery motion to the Court. *See Nevada Power,* 151 F.R.D. at 120. Bleus did not make an effort to personally consult with Guerrieri although he had many opportunities to do

so, and did not seem open to a mutually agreeable resolution to the issues. In fact, while Guerrieri's offer to personally consult on these matters was pending, Bleus unilaterally contacted the Court on November 9, 2012 to request a telephonic conference and seek the Court's intervention to resolve the dispute. (Doc. 105-1, Ex. 6.) Bleus concluded that "[w]hile [I] have numerous and detailed emails from you regarding every issue to be addressed, as far as [I] am concerned, we have conferred in good faith – as your positions are detailed and crystal clear." (*Id.*)  Plaintiffs were mistaken that simply staking out their positions through email exchanges constitutes a sincere effort to meet and confer. Further, the Court cautioned in its Case Management Order that the parties "shall not contact the Court concerning a discovery dispute or motion for sanctions without first seeking to resolve the matter" pursuant to Local Rule 7.2(j). (Doc. 59 ¶ 6(b).) Indeed, Guerrieri immediately warned Bleus that by contacting the Court for a telephonic conference, he was in violation of the Order because the parties had not had a personal consultation. Guerrieri once again offered to confer telephonically during multiple time slots. (Doc. 105-1, Exs. 7, 8.)  Instead of scheduling a time to confer with Guerrieri, Bleus once again contacted the Court on November 13, 2012 to confirm a specific time for the teleconference. (*Id.*, Ex. 9.)

District courts retain broad discretion to control their dockets and in the exercise of that power they may impose sanctions. *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citing *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)). Further, "a court certainly may assess sanctions against counsel who willfully abuse judicial processes." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (internal citations, quotations, and alterations omitted). Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (internal citations omitted). Plaintiffs' counsel failed to confer in good faith with Defense counsel and his obstinate approach constituted bad faith under the circumstances. Accordingly, Plaintiff's

counsel will be required to personally pay Defendants' reasonable attorneys' fees incurred in attending the teleconference with the Court and responding to Plaintiffs' omnibus discovery motion, pursuant to Local Rule 7.2(j). Plaintiff's counsel is further prohibited from billing his client for the above amount or from, in any way, deducting it from any amount he may recover on behalf of his client. Plaintiffs' counsel is further ordered to provide a copy of this order to his clients and fully explain it to them. The Court will, however, rule on the merits of Plaintiffs' motion in order to resolve the pending discovery disputes.

## III.    RE-OPENING DEFENDANT HOGAN'S DEPOSITION

Plaintiffs argue that because Guerrieri terminated Defendant Hogan's deposition before the presumptive durational limit of seven hours, Plaintiffs should be allowed to re-open the deposition to complete their questioning. *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."); (Doc. 59 ¶ 3.) "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). After beginning Hogan's deposition around 10 a.m. on October 19, 2012 in Dallas, Texas, Guerrieri ended the deposition at 5 p.m., citing that he had to catch an early flight home. At the time Guerrieri terminated the deposition, the court reporter noted that four hours and forty two minutes (4:42) had been used on the record, which is two hours and eighteen minutes (2:18) less than the presumptive limit of seven hours. (Doc. 105-2, Ex. 13 at 294.)

Plaintiffs contend that they noticed Hogan's deposition on September 26, 2012, giving Defendants three weeks to schedule their travel plans to accommodate a full day of testimony. (Doc. 99-2, Ex. 2.) Instead, Guerrieri scheduled an evening flight for which he had to leave at 5 p.m. before completing the deposition. Plaintiffs note that it was only after a few hours of testimony that counsel first indicated he had to leave early to catch his flight while offering to continue the deposition at a later date, if necessary. (Doc. 105-

2, Ex. 13 at 82.) At 4:52 p.m., Guerrieri stated that he "really need[ed] to go" and he would oppose any continuation of the deposition because it was conducted in a redundant and harassing manner. (Doc. 99-2, Exs. 6, 6-c.) Plaintiffs contend that at no time did Guerrieri attempt to change his flight plans when it became apparent that Hogan's deposition would require more time.

Nevertheless, Plaintiffs were informed two months prior to the deposition that an early start would be preferred as Guerrieri and Hogan planned to fly back to the East coast in the early evening. Guerrieri mentioned to Bleus that it is "probably better for a morn [sic] start so we don't run into Friday evening and can all get out of town timely." (Doc. 99-3, Ex. 1-g.) Further, both Hogan and Guerrieri arrived in Dallas the previous night and were available to start the deposition at an earlier time rather than the later start time of 10 a.m. (Doc. 105 at 5.) Therefore, Defendants assert it was Plaintiffs' deliberate scheduling of a late morning start error that led to the curtailment of the deposition. Although Defendants informed Plaintiffs of their scheduling preferences, there was no firm end time decided upon by the parties.

Plaintiffs maintain that Guerrieri did not suspend Hogan's deposition in order to assert attorney-client privilege or to move for a protective order from the Court. Under Fed. R. Civ. P. 30(c)(2), a party may suspend a deposition only when necessary: (1) to preserve a privilege; (2) to enforce a limitation ordered by the court; or (3) to present a motion under Rule 30(d)(3) to terminate or limit the deposition. The only grounds to move to terminate or limit a deposition is if "it is being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent." Fed. R. Civ. P. 30(d)(3); *Biovail Labs., Inc. v. Anchen Pharm., Inc.,* 233 F.R.D. 648 (C.D. Cal. 2006) (internal citation omitted). It is not the embarrassment or annoyance caused by unfavorable answers that is the controlling criterion under 30(d)(3), but "the manner in which the interrogation is conducted that is the basis for refusing to proceed, followed by the required motion to seek relief." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998). The motion may be filed in the court where the action is pending or the

deposition is being taken and if the party so demands, the deposition must be suspended for the time necessary to obtain an order. Fed. R. Civ. P. 30(d)(3)(A). The court may then order that the deposition be terminated or limit its scope and manner. *Id.* 30(d)(3)(B). If terminated, the deposition may be resumed only by order of the court where the action is pending. *Id.* "[If] such a judicial determination is not sought, this Court will presume that there were not sufficient grounds for the objection and instruction not to answer, or the termination of the deposition, and that the action was undertaken merely to obstruct the discovery process." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. at 618-19.

Defendants argue that they terminated the deposition because Bleus "abused and harassed Hogan for nearly 5 hours" and they did not want that conduct to proceed for another two hours. (Doc. 105 at 7.) However, Guerrieri did not move for a protective order pursuant to Rule 30(d)(3) before terminating the deposition. "This tactic contravenes the requirement that an application to terminate must be made to the court." *Biovail Labs.,* 233 F.R.D. at 653 (internal citations and quotations omitted); *see also In re Omeprazole Patent Litig.*, 227 F.R.D. 227, 230 (S.D.N.Y. 2005) ("It is not the prerogative of counsel, but of the court, to rule on objections . . . [I]f [counsel] believed that the examination was being conducted in bad faith . . . or that the deponents were being needlessly annoyed, embarrassed, or oppressed, he should have halted the examination and applied immediately to the ex parte judge for a ruling on the questions, or for a protective order, pursuant to Rule 30(d)."); *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 643 (N.D. Ind. 1991).

Nevertheless, Defendants argue that because Plaintiffs conducted the deposition in bad faith, they should not be allowed to re-open Hogan's deposition. (Doc. 105 at 5.) Bleus asked several questions on allegedly irrelevant matters regarding Hogan's medical history including: (1) a knee injury that occurred more than thirty years prior to the accident (Doc. 105-2, Ex. 13 at 20-24); (2) a worker's compensation claim that Hogan filed three years prior to the accident (*id.* at 17-19); and (3) prescription eyeglasses that did not require restrictions on his driving license (*id.* at 44-46). When Guerrieri objected

as to relevance, Bleus replied that the purpose of the inquiry was to learn about Hogan's physical condition and capacity on the date of the accident. (*Id.* at 18-19.) Even assuming that such inquiry treaded into non-discoverable subject matter, "the mere fact that more than one, or even that a series of irrelevant questions is asked does not, by itself, constitute the annoyance or oppression contemplated by (30)(d)(3)." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. at 619. When Guerrieri found such questioning to be objectionable, the proper procedure would have been to allow the examination to proceed, with the testimony being taken subject to the objections. *See* Fed. R. Civ. P. 30(c).

Defendants further assert that Hogan's deposition was conducted in a wasteful manner. Bleus had Hogan read lengthy discovery responses and other documents into the record even though the exhibits had been marked and enlarged for display. (Doc. 105-2, Ex. 13 at 62-73.) Further, Bleus "put on quite the show" by directing the videographer to focus on certain displays and the deponent at various moments for dramatic effect. (Doc. 105 at 6.) Such tactics are not productive.

Besides irrelevant inquiries and counter-productive tactics, Defendants contend that Bleus repeatedly asked Hogan the same questions after he had answered them in a complete manner. Repetitive questioning can evince bad faith or a motive to harass the deponent if it is excessive. *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 584 (D. Md. 2010) ("[I]f the deponent answers a question completely, counsel should not repeatedly ask the same or substantially identical question.") (internal citation and quotation omitted); *Smith*, 139 F.R.D. at 646 (noting that "it would not be appropriate for counsel examining a deponent to repeatedly and deliberately duplicate questions. . . . Such a practice, . . . could support a motion to terminate a deposition under Rule 30(d), if employed to such an extent that bad faith or a motive to harass the deponent could properly be inferred."). There were many redundant exchanges in Hogan's deposition. To establish that Hogan did not formally compose his discovery responses, Bleus repeatedly asked Hogan whether he knew the meaning of the words "subsequently" and "verbatim"

- 10 -

even though Hogan answered each time that he did not. (Doc. 105-2, Ex. 13 at 74-84.) Hogan eventually asked Bleus "[c]an you please let me know what it means?" (*Id.* at 96.) Bleus inquired multiple times where Hogan was living at the time of the accident (*id.* at 38) and whether he believed he was a safe and careful driver (*id.* at 39-40, 42, 245-46). In another exchange, Bleus repeatedly asked Hogan when he had first seen Plaintiffs' vehicle on the date of the accident after he had answered "when it was in the medium [sic]." (*Id.* at 87-93.) At various times, Bleus inquired about the same traffic citations in Hogan's driving history to authenticate them and ask if his employers had taken action against him for those citations. This led Guerrieri to object that Bleus's questioning was "on the verge of badgering," they had covered the same ground "over and over again," and it was unnecessary to authenticate the same traffic citations "nine times in a row." (*Id.* at 245-46.) There was no need for Bleus to ask the same questions after Hogan had fully answered them on the record even if Bleus was testing Hogan's "knowledge, recollection and veracity." *See Smith*, 139 F.R.D. at 646. Nor was there a need to repeatedly authenticate the same documents. Taken as a whole, these repetitive lines of inquiry were indeed wasteful and an annoyance. They further demonstrate an intent to harass.

Defendants assert that Bleus routinely asked attorney-client privileged questions during the deposition. The first instance is when Bleus inquired whether Hogan spoke with Guerrieri during a break about his deposition testimony. (Doc. 105-2 at 43-44.) Bleus did not inquire into the substance of that conversation. (*Id.*) Therefore, his question did not implicate the attorney-client privilege. The second instance is when Bleus questioned Hogan about who helped prepare his discovery responses at which point Guerrieri objected, stating that "[w]e're getting really dangerously close to attorney/client privilege here. I'm going to instruct him not to answer in a minute." (*Id.* at 79-80.) Bleus again inquired as to who placed certain words in Hogan's responses, eliciting another objection. (*Id.* at 80-81.) At that point, Bleus called the Court to clarify what he could properly ask from Hogan. (*Id.* at 80-82.) Upon return, he stated that the Court permitted

him to ask about the substance of Hogan's discovery responses but not their formal preparation. (*Id.* at 84.)  Bleus followed the proper procedure and did not retread the same ground during the remainder of the deposition. Thus, after receiving direction from the Court, Bleus's questioning did not repeatedly implicate the attorney-client privilege or work product immunity in a manner amounting to bad faith.

Defendants contend that Hogan and Guerrieri were subject to additional harassing and abusive conduct during the deposition. Bleus spent significant time questioning Hogan about who had helped Hogan prepare his discovery responses. He asked Hogan whether he knew the definitions of words used in the responses and if he normally refers to himself in the third person as he did in his responses. (*Id.* at 73-84.) Guerrieri objected to the nature of Bleus's questioning as argumentative. (*Id.* at 76.) In response, Bleus threatened that any person who assisted Hogan in preparing his discovery responses, including Guerrieri, would be made to testify about that preparation. (*Id.*) Such threats are not only counterproductive but "unprofessional and discourteous." *See Freeman v. Schointuck*, 192 F.R.D. 187, 189 (D. Md. 2000). However, inquiry into the substance of discovery responses is not barred during a deposition. *See Smith*, 139 F.R.D. at 646 (noting that an oral deposition "is not merely a device to uncover and develop information. It also provides a legitimate and efficient means of testing a witness' knowledge, recollection and veracity."). Defendants have established that Bleus was unprofessional and discourteous.

When challenged by Guerrieri to justify another line of inquiry, Bleus further questioned Hogan's veracity stating "[w]ell, thus far we have, in my opinion, found that your client has misrepresented certain facts" and "I have further proof that perhaps your client has been less than truthful about these disclosures." (Doc. 105-2, Ex. 13 at 163, 165.) Although the ensuing exchange was especially testy, Bleus's statements in response to Guerrieri's challenge do not evince harassing conduct. *See Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 584 (D. Nev. 2011) (noting that there are many occasions in which deposing counsel may ask a question or make a statement that a deponent or counsel

consider improper, "but will be unable to show [that it] is [made] in bad faith, or to annoy, embarrass or harass the witness."). Nonetheless, Bleus's overall conduct during Hogan's deposition was frequently counterproductive and wasteful. *See Freeman*, 192 F.R.D. at 189 ("No one expects the deposition of a key witness in a hotly contested case to be a non-stop exchange of pleasantries. However, it must not be allowed to become an excuse for counsel to engage in acts of rhetorical road rage against a deponent and opposing counsel."); *Mezu*, 269 F.R.D. at 584. It was also discourteous and unprofessional.

Plaintiffs argue that because Guerrieri unilaterally suspended Hogan's deposition without claiming attorney-client privilege or moving for a protective order, Bleus was unable to inquire about several relevant topics in preparation for trial. Plaintiffs want to re-open Hogan's deposition to further impeach Hogan, question Hogan about his employment materials, training materials, and materials dealing with Defendants Mayflower and Clark as they relate to Hogan as well as about other materials relating directly to the accident with Plaintiffs. (Doc. 99 at 5.)

With some important restrictions, the Court will allow Plaintiffs to continue Hogan's deposition for two hours and eighteen minutes (2:18) pursuant to the presumptive limit under Rule 30(d)(1) and the Court's Case Management Order (Doc. 59 at 3). Although that limit is a presumptive and not mandatory one, Plaintiffs have described remaining areas of inquiry that are relevant to this personal injury accident case. It is within the scope of discovery to question Hogan regarding his training, relationship with the corporate Defendants, and accident-related documents. Further, knowledge and veracity of the deponent are always at issue during witness testimony. *See Smith*, 139 F.R.D. at 646.

Plaintiffs seek to continue Hogan's deposition in Albuquerque, New Mexico. The Court "has wide discretion to establish the time and place of depositions." *Hyde & Drath v. Baker,* 24 F.3d 1162, 1166 (9th Cir. 1994). Hogan routinely trucks in Canada and resides in Florida. He would spend significant time and expense to travel to New Mexico

for a second deposition of a little over two hours. The previous deposition took place in Dallas, Texas because it was amenable to Hogan's trucking schedule.  The parties will agree to a mutually convenient location for the second deposition. In the alternative, they may jointly stipulate to take the deposition telephonically or by other remote means. Fed. R. Civ. P. 30(b)(4). Further, the actions of both parties have led to this second deposition. Although the Court deems Bleus the less responsible of the two, because he conducted the deposition in a wasteful unprofessional and discourteous manner, Guerrieri unilaterally suspended the deposition without offering to continue it at a later date or moving for a protective order. Accordingly, Defendants' travel expenses and attorneys' fees related to Hogan's second deposition will be shared equally by the parties' attorneys. *See Interlego A.G. v. Leslie-Henry Co.*, 32 F.R.D. 9, 11 (M.D. Pa. 1963) ("The allowance of travel expenses and counsel fees incident to depositions is also in the court's discretion."); *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 701 (S.D. Fla. 1999) (holding that because a party caused the need for further depositions, that party should bear the costs of retaking the depositions); *In re China Merchants Steam Nav. Co.*, 259 F. Supp. 75, 78 (S.D.N.Y. 1966).  By this the Court means that, if the deposition is reconvened or if such travel is necessary, Guerrieri and Bleus personally will pay in equal proportion the reasonable amount of travel, lodging, local transportation and meals incurred by Hogan in the reconvened deposition.  If Hogan needs such money advanced a reasonable amount shall be advanced in equal proportion by both Guerrieri and Bleus personally.  Further, Guerrieri, and/or his partners and associates will keep track of the time and reasonable charges they incur in preparing Hogan for and representing him at this second deposition.  The Court will determine what portion of that time, if any, is reasonable, and divide it in half.  Guerrieri will be unable to bill his client for his half of what the Court determines to be his reasonable charges. Bleus will personally pay his half of those charges to Defendants.  Both counsel are prohibited from billing their respective clients for the above amount that they are liable to pay, or from, in any way, deducting it from any amount they may recover on behalf of

their clients.  Both counsel are further ordered to provide a copy of this order to their clients and fully explain it to them.

## IV.    SANCTIONS FOR DEFENDANT HOGAN'S DISCOVERY ABUSES

Plaintiffs move for sanctions for alleged discovery abuses during Hogan's deposition. They argue that Hogan provided false testimony and evasive answers which is sufficient evidence of bad faith to warrant the imposition of sanctions. A party's failure to cooperate in discovery or to make disclosures may merit sanctions. *See* Fed. R. Civ. P. 37. Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* 37(a)(4). If a deponent fails to disclose information, the Court may order payment of the reasonable expenses, including attorney's fees, caused by the failure; inform the jury of the party's failure; and may impose other appropriate sanctions. *Id.* 37(c)(1). The Court may also "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent," and this sanction may be imposed on a deponent or attorney. *Id.* 30(d)(2). The Court further has the inherent power to assess sanctions where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991).

The record does not reveal that Hogan's answers were evasive or dishonest, or made in bad faith. Plaintiffs point to mistaken answers or omissions that at most exhibit a lacking memory. Hogan did not remember every address at which he resided, either temporarily or long-term, and when asked by Bleus Hogan mentioned only those that he could recall. (Doc. 99-5, Exs. 23-26.) When Bleus confronted Hogan with other residential addresses, he readily admitted to having lived there. As a professional truck driver, it is expected that Hogan may not recall every traffic infraction for which he was cited more than ten years prior to the subject accident. (Doc. 99-6, Exs. 39-45.) Regarding the subject accident that occurred nearly two years prior to the deposition, Hogan mistook which of the three cars he was apparently hauling that day that he was

driving. (*Id.*, Ex. 34.) He could not recall the specific language used in the citation for his involvement in the accident, although he had reviewed the accident report before the deposition. (*Id.*, Exs. 35-38.) Hogan's lack of remembrance and omissions seem to be inadvertent and do not demonstrate that he was less than forthcoming in his deposition.

Additional testimony provided by Hogan may have contradicted other sources but that is not surprising. Hogan testified he never saw Plaintiffs' vehicle at any time prior to the rollover of that vehicle in the highway median. (Doc. 99-5, Exs. 15-18.) That testimony is consistent with his interview on the date of the accident as documented in the accident report (Doc. 99-4, Ex. 9) and his answer to interrogatories (*id.*, Ex. 13 at 3). However, it is contrary to the investigating officer's testimony that Hogan told him he had observed the vehicle next to him during a lane change maneuver. (Doc. 100, Ex. 1 at 82-83.) It is unremarkable that the officer's recollection of Hogan's statements and Hogan's own recollection of the accident differ. Plaintiffs also contend that Hogan lied about using a Plaintiff's mobile phone to call 911 at the scene of the accident (Doc. 99-5, Exs. 12, 19, 20) and about the fact that he voluntarily quit from a former trucking position, when he was in fact terminated (Doc. 99-5, Ex. 31; Doc. 99-6, Ex. 32). If Hogan did provide false answers under oath, that may, of course, be used to be impeach his testimony at trial and may support a finding against Defendants on the issues to which the false answers were relevant. However, Hogan's conduct at the deposition does not merit sanctions.

## V.   RULE 30(B)(6) DEPOSITIONS OF DEFENDANTS MAYFLOWER AND CLARK

Plaintiffs move to compel Defendants Mayflower and Clark to designate corporate representatives for Rule 30(b)(6) depositions. A party may notice a corporation's deposition without specifically naming the individual to be deposed and instead setting forth "with reasonable particularity" the matters on which the examination is requested, so the corporation can designate one or more individuals to testify. Fed. R. Civ. P. 30(b)(6). "[T]he effectiveness of the Rule bears heavily upon the parties' reciprocal

obligations." *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 638 (D. Minn. 2000). The party requesting the deposition must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." *Id.; see also Dwelly v. Yamaha Motor Corp.,* 214 F.R.D. 537, 540 (D. Minn. 2003) ("[T]he Rule only operates effectively when the requesting party specifically designates the topics for deposition, and when the producing party produces such number of persons as will satisfy the request.") (internal quotations and citations omitted). After receiving the notice, the responding party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, unevasively, . . . as to the relevant subject matters." *Prokosch,* 193 F.R.D. at 638 (quotations and citations omitted). The deponent's testimony binds the corporation and may be used at trial by an adverse party for any purpose. *Sanders v. Circle K Corp.,* 137 F.R.D. 292, 294 (D. Ariz. 1991).

Defendants argue that it is simply too late to notice these depositions. They contend that Plaintiffs waited more than eight months before requesting them on November 1, 2012, two months before the discovery deadline, even though Plaintiffs' claims against the corporate Defendants have not changed. Plaintiffs assert that they first requested the 30(b)(6) depositions on June 14, 2012. Plaintiffs' counsel, Josh Eden, had stated in an e-mail exchange with Guerrieri that if Defendants were not prepared to stipulate as to Hogan being in the course and scope of his employment at the time of the accident, "let this message serve as our formal request for Rule 30(b)(6) deponent designation and request." (Doc. 99-7, Ex. 49.) This e-mail did not constitute a formal request for Rule 30(b)(6) depositions as it did not set forth "with reasonable particularity" the matters on which the examination was requested. It simply put Defendants on notice that a request may be forthcoming. Plaintiffs submitted a formal request to Defendants on November 1, 2012 listing categories that would be covered in the 30(b)(6) depositions. (Doc. 99-7, Ex. 51.) This request was tardy because it would require multiple depositions

to be taken during the holiday months before the fact discovery deadline of January 11, 2013. However, as the depositions could lead to relevant discovery and a brief extension of the deadline would suffice, the Court will consider the merits of Plaintiffs' request.

Plaintiffs' formal request states that specific topics to be covered in the 30(b)(6) depositions of Defendants Mayflower and Clark "will include but will not be limited to":

> (1) company policy and procedure(s); (2) company hiring practices including employee background check and interview process; (3) driver training, (4) driver infraction reporting; (5) company employee retention process; (6) employer handbooks; (7) employment manuals; (8) employee training; (9) employment termination policy; (10) employee specific employment file (re: Dana Hogan); (11) any file materials related to Dana Hogan, and (12) any and all topics and matters not listed but directly related to the above.

(*Id.*) At the outset, Defendants contend that certain categories are either overbroad or require limitation. "[T]he requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch,* 193 F.R.D. at 638.

Some of the requested categories cover a large amount of information that may be irrelevant to Plaintiffs' claims. The categories "company policies and procedures," "company employee retention process," "employer handbooks", "employment manuals" are overbroad as they are not limited to areas relevant to this personal injury matter. Although the categories of "employee specific employment file" and "any file materials" are limited to Defendant Dana Hogan, there may be numerous records contained therein. The inquiry into Hogan's employment file should be further limited to the relevant topics in this case. The burden is on Plaintiffs, as the party requesting the deposition, to satisfy the "reasonable particularity" standard of Rule 30(b)(6). Without further clarification, Defendants cannot reasonably designate and prepare a corporate representative to testify on their behalf regarding these broad lines of inquiry. *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002). Sufficient discovery based on numerous interrogatories and requests for production has been produced to allow Plaintiffs to

narrow the focus of these categories. The Court will require Plaintiffs to file an amended Rule 30(b)(6) notice that reasonably limits these lines of inquiry. Further, Plaintiffs' notice includes language that the topics "will include but not be limited to" the categories listed in the notice and that "any and all topics and matters not listed but directly related to the above" would be inquired into during the depositions. This language is overbroad and defeats the purpose of having categories at all. *See id.*; *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005); *Reed v. Bennett,* 193 F.R.D. 689, 692 (D. Kan. 2000).  It will be stricken from the amended notice.

Further, the categories of "company hiring practices including employee background check and interview process", "driver training", "company employee retention practices", and "employment termination policy" should be inquired into only as they apply to independent drivers and not as they apply to other employees. The Court agrees this is a reasonable limitation. Defendants also request Plaintiffs to clarify the category of "driver infraction reporting" as to whether it is the reporting of Mayflower and Clark, or of the drivers, the Motor Vehicle Division, third party background check companies, or another party into which Plaintiffs would inquire. Plaintiffs will clarify that category in their amended notice along with the other revisions hereby ordered.

If Plaintiffs ask questions outside the scope of the matters described in their notice, "the general deposition rules govern, so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6)." *Detoy v. City and Cnty. of San Francisco,* 196 F.R.D. 362, 367 (N.D. Cal. 2000). If the corporate representative "does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *King v. Pratt & Whitney, a Div. of United Technologies Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) *aff'd sub nom. King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000). Defendants' counsel "may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party." *Detoy,* 196 F.R.D. at 367.

However, Defendants are advised that Rule 30(b)(6) implicitly requires persons to review all matters known or reasonably available to the corporation in preparation for the deposition. *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 525-26 (C.D. Cal. 2008) (internal citations and quotations omitted); *see also Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33, 36 (D. Mass. 2001).

Defendants request that each deposition be limited to four hours, as can be scheduled. In light of Plaintiff's demonstrated tendency to needlessly extend depositions by irrelevant, and harassing questions, and in light of his overly broad 30(b)(6) designations, the request is granted. Plaintiffs will have more than adequate time to take such depositions if they appropriately limit the designations, and if they are efficient in their questioning.

Defendants further request that the depositions be conducted telephonically or by video conference. Fed. R. Civ. P. 30(b)(4) provides, in relevant part, that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." There is no information presented by Defendants by which the Court may meaningfully assess whether such means are feasible, practical, or fair. Accordingly, the Court declines to order that the depositions be taken telephonically absent a stipulation to the same by both parties. Plaintiffs have not chosen a place at which to depose Defendants Mayflower and Clark. Although there is a general presumption that the deposition of a corporate party should be taken at its place of business, that presumption is not conclusive. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005). The Court also considers the convenience of the parties, relative hardships and the economy obtained in attending a particular location. *See id.* at 628-29. Plaintiffs do not argue there is any particular hardship in traveling to take these depositions and have previously offered to do so. (Doc. 105-1, Ex. 10.) Thus, the 30(b)(6) depositions shall be taken at the places of business of Defendants Mayflower and Clark in Missouri and New York, respectively, on convenient dates to be determined by the parties.

**IT IS HEREBY ORDERED** that Defendants' Motion for Sanctions for Failure to Confer in Good Faith (Doc. 105) is **granted,** as follows:

1.      Plaintiffs' counsel is ordered to pay Defendants' reasonable attorneys' fees incurred in attending the teleconference with the Court on November 29, 2012 and responding to Plaintiffs' discovery motion (Doc. 99) pursuant to Local Rule 7.2(j) and upon Defendants' application in compliance with Local Rule 54.2.

**IT IS FURTHER ORDERED,** that Plaintiffs' Motion to Re-Open Defendant Dana A. Hogan's deposition (Doc. 99) is **granted,** as follows:

1.      Plaintiffs will continue Hogan's deposition for no longer than two hours and eighteen minutes (2:18) pursuant to Fed. R. Civ. P 30(d)(1). Areas of inquiry will be restricted to (1) Hogan's employment and training materials, (2) materials dealing with Defendants Mayflower and Clark as they relate to Hogan, and (3) other materials relating directly to the accident with Plaintiffs.

2.      If Plaintiffs exceed these areas of inquiry, engage in wasteful or redundant questioning, or persist in inquiring about matter which implicates attorney-client privilege, Defendants may suspend the deposition to move for a protective order pursuant to Fed. R. Civ. P 30(d)(3). If the motion is granted, the deposition will be terminated and Plaintiffs will be subject to sanctions pursuant to Fed. R. Civ. P. 30(d)(2).

3.      The parties shall agree upon a mutually convenient location and date for the deposition. In the alternative, they may jointly stipulate to take the deposition telephonically or by other remote means, pursuant to Fed. R. Civ. P. 30(b)(4).

4.      Defendants' travel expenses, reasonable preparation costs, and attorneys' fees related to Hogan's second deposition will be shared equally by the parties' counsel. Upon conclusion of the deposition, Defendants shall apply for such fees and costs in compliance with Local Rule 54.2.

**IT IS FURTHER ORDERED,** that Plaintiffs' Motion for Sanctions for Defendant Hogan's Discovery Abuses (Doc. 99) is **denied**.

**IT IS FURTHER ORDERED,** that Plaintiffs' Motion to Compel Rule 30(b)(6)

Depositions of Defendants Mayflower and Clark (Doc. 99) is **granted,** as follows:

    1.    Plaintiffs shall, no later than seven days from entry of this order, file an amended notice for Rule 30(b)(6) depositions of Defendants Mayflower and Clark limiting and clarifying the topics of inquiry as described in this Order.

    2.    The depositions of Defendants Mayflower and Clark will be taken at their places of business in Missouri and New York, respectively. In the alternative, the parties may jointly stipulate to take the deposition telephonically or by other remote means, pursuant to Fed. R. Civ. P. 30(b)(4). The parties shall agree upon mutually convenient dates for the depositions. Each deposition shall be limited to one day of four hours pursuant to Fed. R. Civ. P. 30(d)(1) and subject to a protective order and termination if wasteful, abusive, or harassing conduct occurs.

    **IT IS FURTHER ORDERED,** that the deadline for completing Hogan's second deposition, the Rule 30(b)(6) depositions, and related filings shall be extended to **May 13, 2013**.

    Dated this 14th day of March, 2013.

_H. Murray Snow_

G. Murray Snow
United States District Judge